IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, 455 Massachusetts Avenue, N.W. Washington, D.C. 20001, <br><br>                     Plaintiff, <br>      v. <br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, 1200 Pennsylvania Avenue, N.W. Washington, D.C. 20460, and <br><br>ANDREW WHEELER, in his official capacity as Acting Administrator of the U.S. Environmental Protection Agency, 1200 Pennsylvania Avenue, N.W. Washington, D.C. 20460, <br><br>                     Defendants. | Civil Action No. 18-cv-2400 |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1. This is an action for injunctive and declaratory relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") challenges the failure of Defendant Environmental Protection Agency ("EPA") to release documents expressly incorporated by reference in former EPA Administrator Scott Pruitt's August 13, 2018 public financial disclosure report, in violation of the Ethics in Government Act ("EIGA"), 5 U.S.C. app. 4 § 101, *et seq.*

2. Administrator Pruitt resigned from EPA in July 2018, in the wake of ethics scandals that plagued his tenure at the agency. His public financial disclosure report, filed more

than a month after his resignation, states that he was provided "various" unidentified "items as part of events, meetings, or otherwise, as an extension of and in conjunction with [his] position" as EPA Administrator, and that these items were listed in a written inventory created by EPA ethics personnel. Rather than evaluating whether these items qualified as gifts subject to EIGA's disclosure requirements, Mr. Pruitt's public financial disclosure report "incorporate[s]" the non-publicly available inventory "by reference . . . for consideration," without describing the contents of that inventory. Because the inventory is incorporated in Mr. Pruitt's financial disclosure report, it is subject to EIGA's public disclosure requirements. And per those requirements, EPA must "permit inspection" or "furnish a copy" of Mr. Pruitt's full and complete public financial disclosure report—including the incorporated inventory—"to any person requesting such inspection or copy." 5 U.S.C. app. 4 § 105(b)(1).

3.      EPA, however, has rejected CREW's request to obtain the inventory referenced in Mr. Pruitt's financial disclosure, asserting that the inventory is "not part of" the financial disclosure, even though it is expressly incorporated therein by reference. EPA's failure to release the inventory violates EIGA and is therefore "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "unlawfully withheld" agency action. 5 U.S.C. § 706.

4.      This suit requests a declaratory judgment that EPA's actions violate EIGA, and injunctive relief compelling EPA to comply with its EIGA obligations.

**JURISDICTION AND VENUE**

5. This action arises under the APA, 5 U.S.C. § 701, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court has personal and subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States).

6. Venue lies in this district pursuant to 28 U.S.C. § 1391(e).

**PARTIES**

7. Plaintiff CREW is a nonprofit, non-partisan corporation, organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials. To advance its mission, CREW uses a combination of research, litigation, advocacy, and public education to disseminate information to the public about public officials and their actions, and outside influences that may bear on those actions.

8. CREW routinely requests, reviews, and analyzes data made available to the public pursuant to EIGA, including public officials' financial disclosure reports. Such reports include information relevant to public officials' potential conflicts of interest, compliance with federal law, and other matters of significant public concern. Using this information, CREW is able to educate the public—through its website, press releases, reports, social media, and other methods of distribution—about the integrity of public officials and candidates for public office, their compliance with federal law, and our system of government.

9. CREW also frequently utilizes information from public financial disclosure reports in submitting to federal agencies requests for investigations concerning potential legal violations by public officials. For example, CREW recently submitted requests for investigation

to the Department of Justice ("DOJ"), Department of Commerce Office of Inspector General, and the Office of Government Ethics ("OGE") concerning potential criminal conflicts of interest and false statements by Secretary of Commerce Wilbur L. Ross, all of which rely extensively on Secretary Ross's public financial disclosure reports.  *See* Letter from CREW to DOJ and Dep't of Commerce Inspector General, Aug. 16, 2018, *available at* https://bit.ly/2DxRrJI; Letter from CREW to DOJ and OGE, June 22, 2018, *available at* https://bit.ly/2M6Pas8.  Similarly, CREW submitted a request for investigation concerning potential false statements and violations of ethical obligations by Mick Mulvaney, Director of the Office of Management and Budget and Acting Director of the Consumer Financial Protection Bureau, which likewise relied extensively on public financial disclosure reports.  *See* Letter from CREW to Sens. Mike Enzi and Bernie Sanders, and Inspector General of Federal Reserve, April 30, 2018, *available at* https://bit.ly/2OACzyM.

10.     In the past, CREW has regularly filed requests for public financial disclosure reports pursuant to EIGA, and it expects to continue doing so.  In addition, CREW has used, and expects to continue using, the APA to challenge agency actions and policies it believes are contrary to law, and to compel unlawfully withheld agency action.

11.     CREW is hindered in carrying out its core programmatic activities when agencies fail to timely and fully release public financial disclosure reports, as EPA has done here.  This deprives CREW of information critical to advancing its ongoing mission of identifying and informing the public about issues bearing on the integrity of public officials, their potential conflicts of interest, and their compliance with federal law.

12. Defendant EPA is an agency within the meaning of the APA, 5 U.S.C. § 701, and EIGA, 5 U.S.C. app. 4 §§ 105, 109. EPA operates under the supervision and direction of the EPA Administrator.

13. Defendant Andrew Wheeler is the Acting Administrator of EPA and is sued in his official capacity only. As Acting EPA Administrator, Wheeler is responsible for ensuring the agency complies with its EIGA obligations, including its obligation to "permit inspection of [a financial disclosure] report by or furnish a copy of such report to any person requesting such inspection or copy" within thirty days after the report is filed. 5 U.S.C. app. 4 § 105(b)(1).

## LEGAL FRAMEWORK

### *The Ethics in Government Act*

14. Congress enacted EIGA in 1978, in the aftermath of the Watergate scandal. *See* Pub. L. No. 95-521, 92 Stat. 1824 (1978). Among other things, EIGA imposes financial disclosure obligations on individuals holding or seeking certain public offices. *See* 5 U.S.C. app. 4 §§ 101-11; 5 C.F.R. Pt. 2634.

15. EIGA established the Office of Government Ethics ("OGE") to administer key portions of the statute. 5 U.S.C. app. 4 § 401. OGE's responsibilities include (a) promulgating regulations governing the "filing, review, and public availability" of financial disclosure reports; (b) "monitoring and investigating compliance with the public financial disclosure requirements of [the statute] by officers and employees of the executive branch and executive agency officials responsible for receiving, reviewing, and making available financial statements filed pursuant to such title"; and (c) "establishing a formal advisory opinion service whereby advisory opinions are rendered on matters of general applicability or on important matters of first

impression . . . , and whereby such advisory opinions are compiled, published, and made available to agency ethics counselors and the public." *Id.* §§ 402(b)(1), (3), (8).

16. As the legislative history makes clear, Congress designed EIGA to be "a comprehensive statute requiring full and complete public financial disclosure by high-level officials in all three branches of the Federal Government." S. Rep. 95-170, at 42, 1978 U.S.C.C.A.N. 4,216, 4,258 (March 16, 1977). Congress recognized that mandating public financial disclosure would "increase public confidence in the government"; "deter conflicts of interest from arising" by ensuring that officials' financial activities would "be subject to public scrutiny"; "deter some persons who should not be entering public service from doing so"; and "better enable the public to judge the performance of public officials." *Id.* at 21-22.

17. OGE has similarly recognized that EIGA's public disclosure requirements are intended "to ensure confidence in the integrity of the Federal Government by demonstrating that they are able to carry out their duties without compromising the public trust." 5 C.F.R. § 2634.104(a).

18. To achieve these goals, EIGA requires Executive Branch officials—including Senate-confirmed agency heads such as the EPA Administrator—to file annual financial disclosure reports. 5 U.S.C. app. 4 § 101.

19. With respect to reporting gifts, EIGA requires that financial disclosure reports contain "[t]he identity of the source, a brief description, and the value of all gifts aggregating more than the minimal value as established by section 7342(a)(5) of title 5, United States Code, or $250, whichever is greater, received from any source other than a relative of the reporting individual during the preceding calendar year." 5 U.S.C. app. 4 § 102(a)(2)(A). The OGE

6

regulation implementing this provision provides that "each financial disclosure report filed pursuant to this subpart shall contain the identity of the source, a brief description, and the value of all gifts aggregating more than $390 in value which are received by the filer during the reporting period from any one source." 5 C.F.R. § 2634.304(a).

20.    Financial disclosure reports "shall be filed by the reporting individual with the designated agency ethics official at the agency by which he is employed." 5 U.S.C. app. 4 § 103(a).  And "[e]ach designated agency ethics official . . . shall make provisions to ensure that each report filed with him under this title is reviewed within sixty days after the date of such filing." *Id.* § 106(a)(1).  "If after reviewing [the] report . . . the designated agency ethics official . . . is of the opinion that on the basis of information contained in such report the individual submitting such report is in compliance with applicable laws and regulations, he shall state such opinion on the report, and shall sign such report." *Id.* § 106(b)(1).

21.    EIGA confers a right of access to public financial disclosure reports, providing that "[e]ach agency" and "supervising ethics office in the executive . . . branch . . . shall make available to the public . . . each report filed under this title with such agency or office." 5 U.S.C. app. 4 § 105(a).  Specifically, "each agency" and "supervising ethics office . . . shall, within thirty days after any report is received under this title by such agency or office . . . permit inspection of such report by or furnish a copy of such report to any person requesting such inspection or copy." *Id.* § 105(b)(1).

22.    A public financial disclosure report may be obtained by "any person" who submits a "written application . . . stating" their "name, occupation and address; . . . the name and address of any other person or organization on whose behalf the inspection or copy is

7

requested; and . . . that such person is aware of the prohibitions on the obtaining or use of the report." 5 U.S.C. app. 4 § 105(b)(2).

23.     Upon submitting a proper application, a requester is entitled to receive a full and complete copy of the requested public financial disclosure report of an Executive Branch official.

24.     OGE Form 278e is the standardized form used for public financial disclosure reports (i.e., candidate, new entrant, nominee, annual, and termination reports) by Executive Branch officials, and OGE Form 201 is the standardized form for requesting such reports.

25.     OGE publishes the Public Financial Disclosure Guide ("OGE Guide"), a web-based set of instructions for completing and reviewing the OGE Form 278e. *See* https://www.oge.gov/Web/278eGuide.nsf.

26.     Neither EIGA nor its implementing regulations state that a filer may satisfy his or her reporting obligations by incorporating external documents or information by reference in a public financial disclosure report.

27.     The OGE Guide states that a "public financial disclosure report must be a complete document in itself.  Although the OGE Form 278e . . . can incorporate material from other sources, the material must be made part of the form by attaching it and referencing it in the relevant Parts."  OGE Guide § 1.03, https://bit.ly/2RonHCb.

28.     OGE has issued a legal advisory concerning the public disclosure of ethics agreements executed by public officials.  *See* Memorandum from Amy L. Comstock, Director, OGE, to Designated Agency Ethics Officials, DO-01-013 (Mar. 28, 2001), https://bit.ly/2OwtfMe ("OGE Advisory DO-01-013").  That advisory explains that when external documents, such as ethics agreements, are "incorporated by reference on the face of" a

public financial disclosure report, "the question of public disclosure is relatively straightforward: the public disclosure requirements of section 105 of the Ethics in Government Act apply." *Id.* at 3. In those circumstances, OGE explained, the incorporated "ethics agreement should be made available to the public along with the SF 278 upon compliance with the requirements of section 105" of EIGA. *Id.* at 4.

### *The Administrative Procedure Act*

29. The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

30. The term "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

31. A court reviewing a claim under 5 U.S.C. § 702 "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* §§ 706(1), (2)(A).

### **FACTS GIVING RISE TO PLAINTIFF'S CLAIM**

32. On February 17, 2017, Scott Pruitt assumed his position as EPA Administrator.

33. Administrator Pruitt's tenure at EPA was rife with ethics scandals, which were the subject of Inspector General investigations, congressional complaints, and widespread media coverage. These included reports that Administrator Pruitt: (a) violated federal gift rules by

paying well below market rates ($50 a night) for a condominium co-owned by the wife of an energy lobbyist, and by improperly accepting sports tickets, meals, air travel, and other items; (b) misused taxpayer dollars by, among other things, purchasing a $43,000 secure phone booth without proper approval, and providing himself an unprecedented and excessive 24/7 security detail; and (c) falsified or concealed official records of his meetings with industry representatives.[1]

34. On July 5, 2018, Administrator Pruitt resigned from EPA.

35. On August 13, 2018, Mr. Pruitt filed his annual public financial disclosure report for calendar year 2017 (the "PFD Report," attached hereto as Exhibit 1). He signed the report and certified that "the statements I have made in this form are true, complete and correct to the best of my knowledge." PFD Report at 1.

36. On September 12, 2018, two designated ethics officials at EPA, Kevin Minoli and Justina Fugh, signed the PFD Report and certified that "[o]n the basis of information contained in this report, I conclude that the filer is in compliance with applicable laws and regulations." PFD Report at 1.

37. In Part 9 of the PFD Report, which is the section for reporting "Gifts and Travel Reimbursements," Mr. Pruitt wrote "[n]one," indicating he received no reportable gifts or travel

---

[1] *See, e.g.*, Lisa Friedman, The Investigations That Led to Scott Pruitt's Resignation, *New York Times*, July 13, 2018, *available at* https://nyti.ms/2qIKs72; Eli Watkins & Clare Foran, EPA chief Scott Pruitt's long list of controversies, *CNN*, July 5, 2018, *available at* https://cnn.it/2GDUIZh; Oliver Milman, A scandal for all seasons: Scott Pruitt's ethics violations in full, *The Guardian*, June 10, 2018, *available at* https://bit.ly/2HBWFkD; Curt Devine, Scott Bronstein, and Drew Griffin, Two Democratic congressmen call for IG probe of Pruitt's secret calendar after CNN report, *CNN*, July 5, 2018, *available at* https://cnn.it/2KN7dTp; Letter from Sens. Thomas Carper and Tom Udall to Kevin Minolo, EPA, June 12, 2018, *available at* https://bit.ly/2JHDMhQ.

reimbursements during the reporting period.  PFD Report at 8.  But he also included an endnote, stating in part:

> During my tenure [as EPA Administrator] I was presented with various items as part of events, meetings, or otherwise, as an extension of and in conjunction with my position, which were received by the advance staff and scheduling personnel and then delivered to EPA Ethics personnel to inventory, review and process to determine whether said items constituted gifts, and if so, whether I could receive said items.  To the best of my knowledge the inventory of these items, and the items themselves, are still physically at EPA and I have not taken possession of permissible items, nor am I personally aware of all the items inventoried, ***but by reference, I hereby incorporate those items for consideration.***

*Id.* at 9 (emphasis added).

38. By email dated September 13, 2018, CREW submitted a completed OGE Form 201 request to EPA seeking Mr. Pruitt's PFD Report, "including all attachments and all items incorporated by reference" therein.

39. Later that day, EPA emailed the following response to CREW's request: "On behalf of the U.S. Environmental Protection Agency, we are responding to your OGE-201 request for the annual report filed by former Administrator E. Scott Pruitt.  Attached is Mr. Pruitt's report, which covers calendar year 2017 only.  As you will see, he signed this report on August 13, 2018, and EPA certified it today.  Pursuant to the Ethics In Government Act, we are releasing his report within 30 days of our receipt."  EPA did not address CREW's request for documents "incorporated by reference" in the PFD Report.

40. CREW responded by noting that CREW's "201 request specifically seeks not just Mr. Pruitt's [PFD] report, but all items 'incorporated by reference' therein."  CREW explained that "[b]ecause the referenced 'inventory of items' is expressly incorporated by reference in Mr.

11

Pruitt's report, it is necessarily part of the report and therefore must be released per 5 U.S.C. app. 4 § 105 and 5 C.F.R. § 2634.603(c)."

41.   EPA responded that it understood CREW's request, but that "the OGE-201 permits release only of certain 'covered records' that are articulated on page 2 of the form that you submitted. You have received the document that EPA received from the filer in its entirety."

42.   CREW responded that it disagreed with EPA's analysis; reiterated its position that documents incorporated by reference in a PFD report are, by definition, part of the report; cited the language from OGE Advisory DO-01-013 indicating that documents incorporated by reference in a PFD report are subject to EIGA's disclosure requirements; and noted that it would pursue available legal remedies if EPA denied the request.

43.   EPA responded that it would take CREW's position under advisement.

44.   Over two weeks later, on September 30, 2018, EPA emailed CREW a final determination denying its request. The agency explained it "consulted with the Office of Government Ethics, and they concur in EPA's determination that an inventory referenced by Mr. Pruitt [in the PFD Report] is not part of the 278 that can or should be released pursuant to an OGE 201." EPA's email did not state that any further administrative remedies were available to CREW under EIGA.

## PLAINTIFF'S CLAIM FOR RELIEF

### CLAIM ONE

**(For a Declaratory Judgment that Defendants' Failure to Release Documents Incorporated by Reference in Former Administrator Pruitt's Public Financial Disclosure Report Violates the Ethics in Government Act, and an Order Compelling Defendants to Release Those Documents)**

45. Plaintiff re-alleges and incorporate by reference all preceding paragraphs above.

46. Mr. Pruitt's PFD Report expressly incorporates by reference an "inventory" in EPA's possession of various unidentified "items" provided to Mr. Pruitt in his capacity as EPA Administrator that may qualify as gifts reportable under EIGA.

47. EIGA requires Defendants to "permit inspection" or "furnish a copy" of Mr. Pruitt's full and complete PFD Report—including any documents incorporated by reference in the report—to "any person requesting such inspection or copy." 5 U.S.C. app. 4 § 105(b)(1).

48. Plaintiff properly submitted a completed OGE Form 201 request for the PFD Report, in accordance with applicable law and regulations. The request explicitly sought all documents incorporated by reference in the report, because such documents are, by definition, part of the report.

49. Defendants issued a final determination denying Plaintiff's request insofar as it sought the inventory of items expressly incorporated by reference in Mr. Pruitt's PFD Report, reasoning that the inventory is "not part of" the report.

50. Defendants' final determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), insofar as Defendants failed to release, in violation of EIGA, a copy of the full and complete PFD Report upon Plaintiff's proper submission of an OGE Form 201 request.

13

51. Defendants have "unlawfully withheld" agency action, 5 U.S.C. § 706(1), by failing to release, in violation of EIGA, a copy of the full and complete PFD Report upon Plaintiff's proper submission of a OGE Form 201 request.

52. Plaintiff has suffered a cognizable informational injury because, as a direct result of Defendants' actions, Plaintiff has (a) been deprived of information that EIGA requires Defendants to disclose to it; and (b) Plaintiff has suffered precisely the type of harm disclosure seeks to prevent, namely denial of access to a full and complete copy of a federal official's public financial disclosure report.

53. Plaintiff has also been injured because Defendants' failure to disclose the requested documents deprives Plaintiff of information critical to advance its ongoing mission—to which Plaintiff has devoted substantial resources—of informing the public about issues relevant to the integrity of public officials, their potential conflicts of interest, and their compliance with federal law.  Had Defendants released the information to which Plaintiff is entitled, Plaintiff would have sought to use that information to educate the public regarding the items provided to Mr. Pruitt in his capacity as EPA Administrator, including details concerning the identity, source, and value of those items.

54. Plaintiff has exhausted all available administrative remedies under EIGA.

55. Plaintiff is therefore entitled to an order declaring Defendants to be in violation of their obligations under EIGA, 5 U.S.C. app. 4 § 105, and compelling them to comply with those obligations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Declare that Defendants have violated EIGA by failing to release all documents incorporated by reference in Mr. Pruitt's PFD Report;

2.     Declare that Plaintiff is entitled to disclosure of the requested documents;

3.     Issue injunctive relief compelling Defendants to release all documents incorporated by reference in Mr. Pruitt's PFD Report;

4.     Award Plaintiff its costs and reasonable attorneys' fees in this action; and

5.     Grant such other and further relief as the Court may deem just and proper.


Date: October 18, 2018                    Respectfully Submitted,

/s/ Nikhel Sus
Nikhel S. Sus
(D.C. Bar No. 1017937)
Adam Rappaport
(D.C. Bar. No. 479866)
Citizens for Responsibility and Ethics in Washington
455 Massachusetts Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org
arappaport@citizensforethics.org

*Counsel for Plaintiff*